## 11005

### CRYMES v. GAUL *ET AL.*

#### (117 S. E., 403)

1. CONTRACTS—DESTRUCTION BY FIRE, OF BUILDING BEING REMODELED, HELD NOT TO RELIEVE CONTRACTOR FOR ITS REMODELING, OR HIS SURETY.—Where contractor, employed to remodel a building, was to get the building as it stood, and all of the building except what was used in the new work, and receive a specified amount for the undertaking and as to be answerable for, restore and make good all damages, etc., occasioned or rendered necessary by fire, etc., the contractor and surety were not discharged by the destruction of the building by fire before completion of the work and by the owner's failure to restore it to the condition it was in when the contractor began to remodel it.

2. DAMAGES—OWNER ENTITLED TO RECOVER FROM CONTRACTOR DIFFERENCE BETWEEN INSURANCE PROCEEDS AND AMOUNT OF FIRE LOSS.—Where contractor agreed to be liable for all damages caused by fire before the completion of remodeling work, owner agreed to and did take out insurance for the benefit of himself and contractor, and the building burned, it was no defense to owner's suit to recover from contractor and its surety the difference between the insurance proceeds and the fire loss that the insurance was not taken out for the full value of the building, for insurance is generally not taken out for full value.

3. DAMAGES—INSTRUCTION AS TO MEASURE OF DAMAGES FOR FIRE LOSS, WHILE CONTRACTOR WAS REMODELING BUILDING, HELD CORRECT.—In an action by owner of a building for a loss resulting from a fire, while contractor was remodeling the building, an instruction as to the measure of damages *held* correct.

4. DAMAGES—AMOUNT OF LOSS CAUSED BY FIRE OCCURRING WHILE CONTRACTOR WAS REMODELING BUILDING, HELD FOR JURY.—In an action by owner of a building for loss resulting from a fire while contractor was remodeling it, the amount of the loss *held* a question for the jury.

Before GARY, J., Greenville, February, 1922. Affirmed.

Action by Thos. G. Crymes against Andrew Gaul *et al.* Judgment for plaintiff $2,650 and both parties appeal.

The charge of Circuit Judge Frank B. Gary is as follows:

Mr. Foreman and gentlemen of the jury: This is an action brought by Mr. Crymes against two individually named here as partners, who were the contractors, and against the bonding company, alleged to have insured the performance of their contract. They allege that they had a contract with these contractors to rebuild or to deliver to them a house which was to cost $5,900, which was to cost Crymes $5,900 and the old house at a valation of $1,500; as I understand, that's the valuation agreed on, and, in consideration for their performance of the contract, he was to deliver them a house according to certain specifications which were attached to the contract. The contract provides for the insurance of the property for the benefit of both of them. Now, the complaint goes on to set forth that fire destroyed the building in the course of construction and the contract was abandoned, and that they have been damaged to a certain amount—I don't remember the exact amount—and that the surety company insured the performance of that contract to the extent of $4,000, and that they ought to have a judgment for $4,000 against all of the defendants, and for any amount more than $4,000 that they are entitled to against the construction company. It is not claimed that the surety company is responsible for more than $1,000 of the damage what ever it may be, if there is damage, but that the surety company and the construction company are responsible for the damage to the extent of $4,000. Now, if there is any damage more than $4,000 that should be charged against the construction company, as the surety company did not contract to stand for more than $4,000 of damages.

Now, the answer of the defendant puts in issue those allegations, and they deny that the plaintiff has been damaged at all, and that makes up the issue which you are to try, and you are to determine from the testimony as given on the stand whether or not Dr. Crymes has been damaged by reason of the failure of the contracting company to perform

its contract. If he has been damaged by the failure of the contracting company to perform its contract, then in what amount has he been damaged? If he has been damaged in any amount in excess of $4,000, then the surety company is responsible for $4,000 of it, and all the defendants are responsible for $4,000 of it, and the contractors are responsible for all of it; the surety company and the contractors to be responsible for $4,000 of the damage.

Now, gentlemen, this is a case that really ought to be before the Master for an accounting, it seems to me, but it is here, and I cannot say that it is improperly here—I don't mean to intimate that—but there is a good deal of figuring on it, and the Master has plenty of time to figure on it, and it seems to me the matter could have been adjusted better before the Master than here. Nevertheless we have got to deal with it as we find it. Now, the plaintiff having come into Court alleging that he has been damaged by reason of the failure on the part of the construction company to perform its contract, undertakes the burden of showing that. The plaintiff must show that he has been damaged by reason of the failure to carry out the contract. The burden is on him. His testimony must outweigh that of 'the defendant; that's the rule of law. Now, then, has he been damaged? The contract is before you. That contract (and there is 'no dispute about these facts) requires that the plaintiff shall pay to the construction company $5,900 in cash and turn over the old building at a valuation of $1,500. Now, that was to be their compensation for delivering to him a house according to the specifications that accompanied the contract. Those specifications will be before you, and there is no dispute about the fact that the old house was turned over to the construction company in part payment of the $7,400 purchase price. There is no dispute about the fact that $3,265 was paid as the work progressed. That is what has been paid as the work progressed. That is what has been paid on the purchase price for the house. Now, then, the testi-

mony is undisputed that the contract has not been completed, has not been carried out. There is no disputing about the fact that Dr. Crymes has received $6,000 from the insurance company. He was entitled to receive a house built according to the specifications mentioned in that contract. That is what he is entitled to receive. Now, what could that kind of house have been replaced for at the time of the bringing of this action? What could it be replaced for—the kind of house that is described in that contract? That is what he was entitled to at the time of bringing this action, a house according to those specifications. Now, there is a principle of law to this effect: That where one is about to be damaged by the wrongful act of another, it is his duty to make that damage just as small as possible, and if the plaintiff, seeing that the contractor was not going to carry out the contract, could save himself from serious damage by procuring that contract to be carried out elsewhere, of course it was his duty to do so. Of course, if it cost more, if he couldn't get it done for what he had contracted for to have it done, then his damage would be the difference between those amounts. What I mean to say is this, gentlemen: If a man has paid $7,500 to have a house according to certain specifications built for him, and he has paid that amount, then, when the contractor refuses or fails to carry out that contract, it is the duty of the one who is about to be damaged to make the damage as small as possible by the expenditure of a reasonable amount of money and time. Now, then, if he could have gone and had that house built according to the specifications and saved himself from any damage that was his duty, or if he had gone ahead and built it as reasonably and cheaply as he could according to those specifications, and it cost more than he had contracted to pay for it, then his damage would be—the measure of his damages would be—that excess of what he had others to do what this other man has failed to do. Now, it is undisputed in this case, as I said, that he was to pay $7,400 and get a house according

to those specifications. He was entitled to get that kind of house, and the duty was on him to pay $7,400 for it. Now, could that kind of house be replaced? What could it have been built by him for at the time of the bringing of this action? Now, it is undisputed that Dr. Crymes has received $6,000, and it is contended that that $6,000 was not as much as he was to get under the contract. He was to pay $7,400, and he was to get a house completed according to the specifications of that contract. He has received $6,000 towards getting that house. Now, with these undisputed facts and what you determine to be other facts in the case is what you must go by in making up your verdict. Now, you are supposed to be reasonable men, you are supposed to be familiar with these sort of things, more familiar, I expect, than the lawyers and the Court, and you must say what a house according to those kind of specifications could have been replaced for at the time of the bringing of this action. The contract provides that Mr. Crymes shall insure the property; as I take it under that contract, he was to insure it for the benefit of both of them, and it is undisputed that Dr. Crymes has got all of the insurance money, and therefore, in figuring out his damage, if he had received any damage, you must charge him with that $6,000. As I said, he contracted to pay $7,400 for that kind of house. It is admitted that he has not paid them $2,635 I believe. That is what he lacks of paying the contract price. Now, you have got to take that into consideration in saying what he was damaged. He hasn't paid all of the contract price. · As I see it, this is a matter of calculation. There is not much law in it. I haven't got any right to comment on any of the facts in the case, and I have tried to avoid commenting on the facts, but in deciding this case you want to do what is right. You want to disregard the fact that it is an individual on one side and a corporation on the other. That isn't the way to try cases. If a corporation ought to have judgment against them, don't hesitate to give them, but if they have

not done anything to deserve that judgment should be given against them, then it is wrong to give judgment against them, and I know as intelligent men as you are you will not allow yourselves to be influenced by any matter of that kind, but you are deciding this matter as between man and man, according to the rules of law that I give you. You want to arrive at a just verdict, whatever that may be; whether it hurts Dr. Crymes or helps him ought not to be any consideration to you; whether it helps the companies or not, that isn't a matter that ought to influence you one particle, but what you want to do is to arrive at a correct verdict, and, so far as I can, I have pointed out to you what facts are admitted, undisputed, and tried to direct your attention to what questions you must determine, and one of the main questions for you to determine, in my judgment, is, what could a house according to the specifications which accompanied the contract be replaced or turned over to Dr. Crymes for at the time of the bringing of this action?

Now, there was something said about the materials. Well, I don't remember whether there is any evidence in the case that Dr. Crymes appropriated the materials to his own use. If he has appropriated the materials to his own use, he ought to account for the value of them; but simply because they were left there in the burned-down house does not make him chargeable with the value of them. He cannot be forced to take over materials that are left for the building of the house simply because they are not destroyed, but if he has appropriated them to his own use, then he is chargeable with the value of them.

Mr. Morgan: Would your Honor pardon me? There isn't any evidence whatever there were any materials left.

The Court: Well, that was my recollection. There is no evidence that Dr. Crymes appropriated those left-over materials. Then I charge you there not being evidence that he appropriated them he cannot be chargeable with it; any left-over materials that were put there by the construction

company are there subject to their orders, but if Dr. Crymes has taken them—and there is no evidence of it, as I recollect it, that he did appropriate them.

Now, I have been requested by the defendant to charge you numerous requests to charge. Going to the second: "Anything that operates to relieve the contractor from liability in this case also relieves the surety on the bond, because the surety merely undertakes to answer for what the contractor must answer." I charge that.

Going on to the fourth: "Where the contractor fails to keep his agreement, the measure of damage is always the sum which will put his employer, the plaintiff, in as good a position as if the contract had been performed."

Now, I charge you that, and I repeat it: "Where the contractor fails to keep his agreement, the measure of damages is always the sum which will put his employer, the plaintiff, in as good a position as if the contract had been performed." That's true, and that's what I charge you. Now, then, one of your inquiries would be, what amount of money would turn over to Dr. Crymes at the time of the bringing of this action the kind of house that is provided for in those specifications that accompanied the contract. There is some evidence along that line, and it is for you to determine, as a matter of fact, what could that kind of a house be turned over to Dr. Crymes for by the expenditure of reasonable amount of money and time?

Going to the fifth: ."To put it another way, all the plaintiff in this case may recover is such a sum of money, if any, as will put him in the same financial position he would have been in had Gaul Construction Company completed its contract." Well, I charge that. "The obligation in this contract is mutual, that is to say, Gaul Construction Company was to build and Crymes was to pay $5,900 for the work as it progressed. Crymes' damages must therefore be adjusted by you in such a way as to equal the value of the performance. Defendants' non-performance saves the plaintiff—"

24—S. C.—124

I don't exactly understand that, and I am not going to charge it, as I don't understand it. I will charge you that under the contract here the purchase price that was to be paid for that completed work was $5,900 and the old house put in at $1,500—$7,400, that was to be the purchase price.

Going to the ninth: "Where the facts are undisputed I can comment on them. It is not disputed that Dr. Crymes had paid Gaul Construction Company at the time of the fire $3,265 and must have paid them $2,365 more had the fire not occurred and the contract being duly completed by them. Nor is it disputed that there were at least $500 worth of brick—"I am going to refuse that because, as I see it, there is no evidence that Dr. Crymes appropriated the brick and the materials that are there to his own use, and, not having appropriated them and there being no evidence that he appropriated them to his own use, he cannot be charged with the value of them, and for that reason I refuse this request to charge. As I see it, if materials and so forth were left out there after the building was burned and not appropriated by Dr. Crymes, they are there subject to the orders of the construction company. "The burden is upon the plaintiff to prove his damages. If he has failed to prove the cost of replacing the—" Well, I refuse to charge that.

Now, gentlemen, I have made it as clear to you as I can as to what you are to determine and I don't see any use to talk to you any longer. As I said, this is an action for damages to Dr. Crymes on account of the failure of the construction company to complete this building according to their contract.

Mr. Morgan: Would your Honor permit me to make a request, to charge the law as I read it from Ruling Case Law? Would you like to have that book?

The Court: Mr. Morgan, now you must realize that it is a great injustice to the Judge to ask him to charge a request to charge that is not sent up to him in writing? I must decline in justice to myself. I do it respectfully.

Mr. Morgan: I know, but you omitted to comment upon the situation upon the cause of action.

The Court: Well, read it.

Mr. Morgan: As I understand the rule, it is that I must do it if I intend to take advantage of it hereafter, is the reason I interrupted you. "There is an obvious and important difference between a contract of suretyship and contract of indemnity. The former type of contract is an accessory undertaking presupposing some contract or transaction to which it is collateral, while the latter is essentially an original contract. There is, moreover, an essential difference, in legal effect, between covenants of indemnity, strictly—that is, of indemnity against loss—and covenants to pay, or assume, or stand for, the debt or a surety's liability thereon. A right of action accrues on those of the latter class as soon as the debt matures and is unpaid, because the liability then becomes absolute, and the failure to pay is a breach of the express terms of the convenant, while those of the former class are not broken, and no right of action accrues, until the indemnitee has suffered a loss against which the covenant runs." (21 R. C. L., 953, § 8.)

The Court: That's good law, undoubtedly. This case, gentlemen, is an action for damages because this contract was breached, because it was not carried out, and I charge you that the surety company having undertaken to see that the contractor carried out their contract are responsible for a failure to carry it out. They have been sued because they and the contractor did not carry out the contract, and it is alleged that the plaintiff was damaged because they didn't carry out the contract. Now, I charge you that the cause of action is all right and the measure of damages, if you give a verdict for the plaintiff, would be the amount of damage that the contractors and the surety company have caused plaintiff, by reason of the fact that they did not see that this contract was carried out. I do not see that I could make it any plainer than that. I recognize it is good law,

what you read there, and I have showed you the application of it. The surety company is liable for damages that were sustained by the breach of this contract, if damages were sustained; just as much so as the contractor was, to the extent of $4,000.

Now, you have to write rather a complicated sort of verdict in this case. Yoy will observe that the individuals forming the partnership of the construction company are sued. The surety company is also sued. It is conceded that you cannot recover, or not more than $4,000 is asked against the surety company, that is as I understand it; it is admitted that they are not responsible for more than $4,000 and interest, but the $4,000 is all that you can hold the surety company for. The other defendants might be held for the full amount, but the surety company could only be held for $4,-000 and interest on that amount. Now, you could not charge both of them with it. Now, for instance, just to give you an example, and not meaning to express an opinion, but suppose, for instance, you should find that $3,500 was the damage sustained by Dr. Crymes. You could not make the surety company pay $3,500 and also the construction company pay $3,500, but you would have a judgment, a verdict, against all of them for $3,500, any of them that could be made to respond to it. After one of them had paid that $3,500, the obligation would be discharged. So, it seems to me, the form of your verdict would be the way you should find an amount over $4,000 would be, suppose you find the damages were $6,000, you would say, "We find against the construction company $6,000. Of this amount we find against the surety company to the extent of $4,000 and interest," of course. Does that carry out the idea?

Mr. Morgan: Yes, sir; that's the idea.

The Court: And Mr. Foreman, after you decide what you want to do you need not bother yourself much about the from of it, because you can come into Court and your verdict can always be rewritten after you get in the Courtroom, if

you decided on what you want and make that known to the Court. The Court could write the verdict for you, as far as that is concerned, so you need not bother your minds much about the form of it after you determine just what it is you want to do. And when you go to your juryroom, if you are confused about anything, if there is any evidence you want to hear read, if there are any of these papers you want to have before you, or if there is any other information you want, don't hesitate to ask for it. If I can properly give it to you I will do so, but if I cannot properly do it I will simply tell you so. I want to assist you in arriving at a correct verdict, and I am anxious to do anything I can properly do to bring about that result, if, in my judgment, the verdict is not a just verdict, why I will have an opportunity of setting it aside. I don't contemplate any such situation, but that's my prerogative.

Is there anything further that either side desires called to the attention of the jury?

Mr. Nettles: Your Honor inadvertently omitted to state in case they find no damages the form of the verdict will be "we find for the defendants."

The Court: Certainly, I ought to have told you that. I almost took it for granted, but I ought to have told you. However, if you find for the defendant you simply say "We find for the defendants." If you find that plaintiff has suffered no damage by reason of the breach of this contract, then you say, "We find for the defendants." That is the answer. I think you had better given them the contract; the date when the action was started, when the paper was delivered—I can't see it well enough to tell, but you can look on the back of this summons and see when the action was started. It was started when it was placed in the hands of the Sheriff. This paper here was given to the Sheriff to be served; that's when the action was started, but the date is somewhere on the back of it. They ought to have the con-

tract and the specifications and anything else they want that
is in evidence.

The fourth and fifth exceptions of the defendant Massachusetts Bonding & Insurance Company are as follows:

(4) Error in charging the jury that plaintiff's damages
should be based upon the cost of replacing the house according to the specifications at the time of the commencement of
the action; it being submitted (a) that the damages, if any,
should have been based on the cost of replacement at the
time of the alleged breach of contract, that is at the time of
the fire; (b) that there was no testimony from which the
jury could arrive at any conclusion as to the cost of replacement at the time the action was brought.

(5) Error in charging the jury: "Now, you are supposed to be reasonable men, you are supposed to be familiar
with these sort of things, more familiar I expect than the
lawyers and the Court, and you must say what a house according to those kind of specifications could have been replaced for at the time of the bringing of this action."

It is submitted that this charge in connection with the
repeated charge that the basis of plaintiff's damages was the
cost of replacement at the time the action was commenced,
and in view of the fact that there was no evidence of replacement value in March, 1920, was tantamount to charging the
jury that, even if there was no evidence in the case as to
replacement value in March, 1920, they must go out of the
record and from their own familiarity with prices determine
such replacement cost.

*Messrs. B. A. Morgan* and *W. C. Cothran,* for Thos. G.
Crymes.

*Mr. Stephens Nettles,* for Massachusetts Bonding & Insurance Co.,* cites: *Destruction of old building terminated
contract:* 12 L. R. A., 571; 3 S. W., 726; 35 S. T., 1013;
65 L. R. A., 111; L. R. A., 1917D, 1006; 6 R. C. L., 1007.
*Owners failure to restore old building ended contract:* 35
S. E., 1013; 40 Am. Rep., 765. *Loss of owner due to his*

*failure to insure:* 19 Wend., 500; 63 N. W., 864. *Measure and amount of damage:* 70 S. C., 108; 68 S. C., 363; 51 S. C., 143; 150 N. W., 348; 88 S. W., 791; 65 Atl., 461; 55 N. W., 604; 3 Suth. Damages (3d Ed.), Sec. 699; 2 Sedj. Damages (9th Ed.) Sec. 643. *Williston Sales,* Sec. 1363.

September 1, 1922.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The plaintiff, Dr. Crymes, desired to remodel his residence in the City of Greenville, and let out the contract to the defendant Gaul Construction Company. They entered into a written contract with the defendant Massachusetts Bonding & Insurance Company as surety. The plaintiff agreed to take out insurance for the benefit of himself and the construction company. The plaintiff took out the insurance in the sum of $6,000. Before the work was completed, the house was burned. The plaintiff collected the insurance, demanded of the construction company that they rebuild, and offered the proceeds of the insurance policy to complete the work. The construction company refused to do so, claiming that they had agreed only to remodel the house, and, as it has been destroyed by fire, it was impossibl to do so. The bond was for $4,000.

At the conclusion of the plaintiff's testimony, the defendant moved for a nonsuit, which was refused. At the conclusion of all the testimony, the plaintiff moved for a direction of verdict for the full amount of the bond. This was also refused. The jury found for the plaintiff, $2,650. From the judgment entered on this verdict, both parties appealed. There are many exceptions, but the parties have consolidated the exceptions.

The defendants' points are: (1) "The destruction of the old building put an end to the contract." This point cannot be sustained. This point has already been decided in 117 S. C., 20 and 21; 108 S. E., 175, 176:

"The demurrer admits the allegations of the complaint to be true, and the contract was before Judge DeVore. The complaint alleges in paragraph 10 that 'The contractors shall be answerable for, restore, and make good all injurious damages, re-erections, and repairs occasioned or rendered necessary by defective material, bad workmanship, fire, and trespass or otherwise, previous to the completion and delivery of the same.' The complaint, contract, and specifications show, that the contractors assumed responsibility for the whole job. The allegations of the complaint admitted to be true by the demurrer set forth fully the things embraced in the undertaking laid before the contractors. They were to get the contractors. They were to get the building as it stood, so much money for their undertaking and job, and the work was to be completed the following August. The contractors were to own all of the old building, except what was stipulated to be retained by the owner, to wit: 'Old material torn out and not used in new work.'"

(2) "The contractors were not insurers of any part of the work, other than their own, and hence were not bound to restore the old building." This point is covered by what has already been said. The construction company agreed to be responsible for fire, with the insurance. It was insured, and they were offered the insurance money to carry out their contract. This was refused.

(3) "If the owner sustained any loss, it was due to his own failure to take out sufficient insurance." Insurance is not taken out for the full value. The plaintiff had the right to protection for the full value while his building was in the possession and control of the contractors, and he provided for it in the policy of insurance and the contract with the construction company. This point cannot be sustained.

(4) "Measure and amount of damages." The measure of damages was correctly charged, the amount was a question for the jury.

Plaintiff appeals from the refusal of the Judge to direct a verdict for full amount of the bond. The amount of the loss was a question for the jury, and was properly submitted to them. There was no error here.

The judgment is affirmed.

MR. CHIEF JUSTICE GARY concurs.

MR. JUSTICE MARION concurs in result.

MR. JUSTICE COTHRAN disqualified.